**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID A. JOHNSON, GERA SIMON, TOMMY JOHNSON, MELISSA COUGHLIN, LANCE PISMAN, and PRESTON ROBINSON, | ) ) ) | |
| | ) | Case No. 12-cv-8594 |
| Plaintiffs, | ) | |
| | ) | Judge John Z. Lee |
| v. | ) | |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| CITY OF CHICAGO and EDDIE CHAPMAN, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs David A. Johnson, Gera Simon, Tommy Johnson, Melissa Coughlin, Lance Pisman, and Preston Robinson ("Plaintiffs"), on behalf of themselves and a putative class of similarly-situated individuals, bring the instant suit against Defendants the City of Chicago (the "City" or "Chicago") and Chicago Police Officer Eddie Chapman ("Chapman") alleging violations of due process and equal protection under the Fourteenth Amendment of the U.S. Constitution and Article 1, § 14 of the Illinois Constitution. Plaintiffs, all residents of Chicago who are required to register annually with the Chicago Police Department (the "CPD") pursuant to the Illinois Sex Offender Registration Act, 730 Ill. Comp. Stat. 150/1, *et seq.* ("SORA"), seek injunctive relief and monetary damages, contending that the City's registration policies for sex offenders, as implemented by the CPD, are constitutionally deficient.

Before the Court are Defendants' motion to dismiss, Plaintiffs' motion for preliminary injunction, and Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23. The Court held an evidentiary hearing regarding Plaintiffs' motion for preliminary injunction, but reserved its ruling pending the parties' submissions of post-hearing briefing. As set forth below,

Defendants' motion to dismiss is granted in part and denied in part, while Plaintiffs' motions for a preliminary injunction and for class certification are denied.

## Background

The following facts as alleged in Plaintiffs' Second Amended Complaint ("Complaint") are taken as true for the purposes of deciding Defendants' motion to dismiss. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## I.     The Illniois Sex Offender Registration Act ("SORA")

SORA imposes a duty on all registered sex offenders in Illinois to register annually with their local police department (in this case, the CPD). (Compl. ¶ 7.) The CPD requires those subject to SORA to register in person at the CPD Headquarters where the Criminal Registration Section ("CRS") is located. (*Id.*) SORA mandates that each registering sex offender pay an initial registration fee of $100.00 and an annual renewal fee of $100.00. *See* 730 ILCS 150/3(c)(6). The registering police department, however, "may waive the registration fee if it determines that the person is indigent and unable to pay the registration fee." 730 ILCS 150/3(c)(6).

There are severe consequences associated with a failure to register pursuant to SORA. *See* 730 ILCS 150/10(a). For example, failure to register under SORA will result in a mandatory minimum fine of $500.00 and jail time for a conviction. *See id.* Moreover, individuals who violate SORA will have their reporting time extended by ten years. *See* 730 ILCS 150/7.

SORA does not proscribe the manner in which a municipality is required to register sex offenders; registering entities such as the CPD must put their own procedures into place. The CPD generates an Illinois Sex Offender Registration Act Form (the "Form") each time a sex offender registers with it. The Form states that failure to comply with SORA will result in a

"felony," "mandates revocation of probation, mandatory supervised release, parole or conditional release," and will result in an administrative extension of the reporting period by ten years. (Compl. ¶¶ 14, 15.) The Form further indicates that registrants are required to re-register within three days of a change in employment, new enrollment in school, or a change of address. (*Id.* ¶ 15.)

## II.     The Enhanced Procedures

On November 20, 2012, presumably in response to this lawsuit, the CRS issued what it called "Enhanced Procedures" governing its registration procedures and SORA enforcement. (*Id.* ¶ 23.) These Enhanced Procedures were disseminated to CRS officers via a memorandum from CRS Sergeant Jones on November 20, 2012. (*Id.*) The Enhanced Procedures set forth guidelines for evaluating indigent applicants and announced numerous other changes in CRS policies. For example, before the Enhanced Procedures, there were no written guidelines to determine whether a registrant was eligible for a waiver on the basis that he or she was indigent or unable to pay the fee. (*Id.* ¶ 19.) Nor did the CRS provide any training or instruction to registering officers as to the proper standard to use when making this determination. (*Id.* ¶ 20.)

Additionally, prior to the Enhanced Procedures, the CRS required an individual to pay the annual registration fee when registering a change in school, address, or employment so long as the change-of-status registration took place within sixty (60) days of when the annual registration fee was due. (*Id.* ¶¶ 16, 17.) This requirement was not disclosed to registrants in written form. (*Id.* ¶ 17.) Under the Enhanced Guidelines, an individual is required to pay the annual fee if registering a change of status within thirty (30) days of their annual registration date (unless, of course, he or she is granted a waiver). (*Id.*) But even under the Enhanced

Procedures, potential registrants do not receive notice of this requirement prior to the time that they arrive at the CRS to register a change of status. (*Id.* ¶ 26.)

As of November 20, CRS also began using a Registration Fee Waiver Application (the "Waiver Application"), which is given to any registering individual who requests a fee waiver. (*Id.* ¶ 27.) CRS does not inform the registering individual of the availability of the Waiver Application until he or she specifically requests it (*id.* ¶ 28), and Waiver Applications are not made available for registrants in the waiting area at CRS. (*Id.* ¶ 30.) According to CRS, however, the Waiver Application form is available on the Internet. (*Id.* ¶ 31.)

Individuals who request a fee waiver are instructed to complete the Waiver Application in its entirety and return it to CRS with verifying documentation. (*Id.* ¶ 32.) The registering officer at CRS then makes the decision as to whether an applicant is "indigent and unable to pay" by examining the "totality of the circumstances" to determine whether it would be either "impossible" to pay the fee or would create an "extraordinary hardship" to do so. (*Id.* ¶¶ 33, 35.) According to Plaintiffs, CRS does not notify applicants that this will be the standard CRS will use to determine whether they will receive a fee waiver. (*Id.* ¶ 34.) Moreover, according to Plaintiffs, at least as of December 20, 2012, CRS supervisors had not explained this standard to the registering officers themselves. (*Id.* ¶ 36.)

Under the Enhanced Procedures, a potential registrant who is denied a fee waiver by the registering officer at CRS may appeal that determination to the supervising officer. (Dkt. 31-3, Enhanced Procedures, Ex. A.) The Enhanced Procedures, however, do not specify a manner in which the supervising officer's decision itself can be appealed, in the event that the initial appeal is denied. (*Id.*) Furthermore, Plaintiffs point out that the Enhanced Procedures do not provide a

way for an indigent registrant to seek a refund of a fee that was previously paid to a registering official. (Compl. ¶ 38.)

## III. The Named Plaintiffs

Named Plaintiff David A. Johnson is required to comply with SORA. (*Id.* ¶ 39.) Johnson paid his annual fee on November 15, 2011, despite the fact that he allegedly was indigent. (*Id.* ¶ 40.) Johnson registered a change-of-employment event with CRS on March 6, 2012, where he signed a statement indicating that he would have to register annually on or before March 3, 2013. (*Id.* ¶ 41.) However, Sergeant Jones noted in Johnson's file on May 29, 2012, that he was required to pay his annual fee by November 15, 2012. (*Id.* ¶ 42.) When Johnson returned to CRS to register another change-of-employment event on October 9, 2012, Officer Chapman refused to register him without the $100.00 annual fee. (*Id.* ¶ 44.) Upon review, Sergeant Jones determined that Chapman properly declined to waive Johnson's annual fee. (*Id.* ¶¶ 44, 45.) Johnson again sought a fee waiver on November 8, 2012; at that time, a different registering officer, Officer Meaders, declined to register him, noting that his annual registration was not due until March 6, 2013. (*Id.* ¶ 46.) On November 20, 2012, after the Enhanced Procedures were in place, Johnson registered another change-of-employment event and was granted a fee waiver. (*Id.* ¶ 47.)

Plaintiff Gera Simon is required to comply with SORA. (*Id.* ¶ 49.) Simon is currently indigent. (*Id.* ¶ 50.) Simon paid the annual registration fee on December 13, 2011, despite the fact he was indigent, using funds donated by his religious congregation. (*Id.* ¶¶ 51, 52.) Simon completed his annual registration at CRS under the Enhanced Procedures on December 10, 2012. (*Id.* ¶ 53.) After completing a Waiver Application, he was deemed indigent, and the fee was waived. (*Id.*)

Plaintiff Melissa Coughlin is required to comply with SORA. (*Id.* ¶ 55.) She receives public assistance. (*Id.*) Coughlin called CPD headquarters at some time prior to July 18, 2012, to inquire whether she was eligible for a waiver, but she was informed there was no waiver process. (*Id.*) On July 18, 2012, Coughlin went to CRS to register; she was employed at the time and had her $100.00 registration fee in hand. (*Id.* ¶ 57.) Although Coughlin informed Officer Chapman that she had money to register, Chapman stated he would waive the fee. (*Id.* ¶ 58.) Chapman allegedly asked Coughlin whether he could call her; when she agreed, he took her contact information off of the registration form and instructed her to not tell anyone about their conversation. (*Id.* ¶ 59.) Officer Chapman also allegedly called her on two separate occasions, asking her for a date and requesting that she take and send him sexually explicit photographs. (*Id.* ¶¶ 60-61.) Coughlin alleges that she had a reasonable belief that her liberty was in jeopardy if she declined to take Chapman's calls. (*Id.* ¶ 62.)

Plaintiff Tommy Johnson is required to comply with SORA. (*Id.* ¶ 66.) Johnson registered with CRS on December 29, 2010. (*Id.* ¶ 67.) In November 2011 he was jailed on a drug possession charge and held in jail until February 2012, preventing him from completing his annual SORA registration. (*Id.* ¶ 68.) Once Johnson was released from jail in February 2012, he went to CRS to register. (*Id.* ¶ 69.) Because he was indigent, Johnson requested a fee waiver, but the registering officer denied his request and did not allow him to register. (*Id.*) Johnson returned a few days later, but a different registering officer also declined his request for a waiver. (*Id.* ¶ 70.) Johnson was arrested on suspicion of gambling on March 15, 2012. (*Id.* ¶ 71.) While being questioned by the arresting officers, it was discovered that he was in violation of SORA. (*Id.* ¶ 72.) Although Johnson explained that he had tried to comply but was denied a waiver, he

was jailed for the SORA violation. (*Id.*) Johnson has been jailed since March 2012 awaiting trial for allegedly violating SORA.[1] (*Id.* ¶ 73.)

Plaintiff Lance Pisman is required to comply with SORA. (*Id.* ¶ 75.) Pisman's annual registration fee was due on or before August 19, 2012. (*Id.*) Pisman went to CRS to register on August 17, 2012. (*Id.* ¶ 76.) When the registering officer requested the fee, Pisman responded that he was indigent and requested a waiver. (*Id.*) His request was denied, and Pisman was not allowed to register. (*Id.*) Pisman returned on August 20, 2012, and asked to speak with the commanding officer, Sergeant Jones. (*Id.* ¶ 77.) Sergeant Jones also denied Pisman's waiver request. (*Id.*) Pisman borrowed the fee from family members and returned the next day, when he registered successfully. (*Id.* ¶ 78.)

Plaintiff Preston Robinson is required to comply with SORA. (*Id.* ¶ 79.) Robinson went to CRS to complete his annual registration in January 2012. (*Id.* ¶ 80.) The registering officer asked Robinson for the registration fee; Robinson responded that he was indigent and that he only was able to obtain $40.00 of the $100.00 fee. (*Id.*) Robinson offered to tender the $40.00 as partial payment and asked the registering officer to allow him additional time to obtain the balance. (*Id.*) The registering officer refused to accept partial payment and told Robinson that, if he did not register and pay the fee in the next few days, a warrant would be issued for his arrest. (*Id.*) Robinson requested a log book to document his attempt to register, but was told there was no log book to sign. (*Id.*) However, the January 10, 2012, Criminal Registration Log maintained by CRS does reflect that Robinson attempted to register but was turned away for failure to pay the fee. (*Id.* ¶ 81.) On June 12, 2012, Robinson was arrested when his home was raided on suspicion of another crime. (*Id.* ¶ 82.) Robinson told the booking officer that he had

---

[1] It is unclear from the parties' submissions whether Johnson was jailed concurrently for any other violations, or whether he has since been released. In the event that Johnson is still incarcerated, the Complaint does not seek his release.

attempted to register in January 2012, but was jailed. He is awaiting trial for allegedly violating SORA.[2] (*Id.* ¶¶ 82, 83.)

Plaintiffs seek monetary damages and prospective injunctive relief to remedy these alleged violations. (*Id.*, Prayer for Relief, p. 23.)

## Discussion

### I. Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint

#### A. Standing

In their motion to dismiss, Defendants first argue that Plaintiffs lack constitutional standing to seek prospective injunctive relief. According to Defendants, Plaintiffs seek only to remedy past harms and allege no real or imminent likelihood that their waiver requests will be denied if made or that they will have an additional registering event triggering a fee that they are unable to pay. Additionally, Defendants point out that three of the six named Plaintiffs admit that they eventually received waivers, and none of the six allege they were denied a waiver under the Enhanced Procedures. Therefore, Defendants argue, Plaintiffs cannot establish the requisite threat of repeated injury and lack standing to obtain prospective injunctive relief.

In order to demonstrate Article III standing to bring suit, Plaintiffs must demonstrate that: (1) they have "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Furthermore, Plaintiffs must demonstrate that they have standing to pursue each form

---

[2] Like Tommy Johnson, it is unclear from the parties' submissions whether Robinson was jailed concurrently for any other violations or whether he remains incarcerated at present. In the event that Robinson is still incarcerated, the Complaint does not seek his release.

of relief sought. *Id.* at 185 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)); *see Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) ("standing is not dispensed in gross."). Here, Plaintiffs seek an injunction ordering "the City of Chicago to adopt constitutional procedures to register sex offenders residing in Chicago." (Compl. at p. 23.) In effect, Plaintiffs seek an order requiring CPD to amend its Enhanced Procedures to the extent that they do not comport with procedural due process. Plaintiffs also seek monetary damages for what they allege are due process violations, as well as other violations, for injuries sustained in connection with their past attempts to register with the CPD. (*Id.*) The Court addresses these issues in turn.

### 1. Standing to Seek Prospective Injunctive Relief

In order to have standing to seek prospective injunctive relief, Plaintiffs must establish that they have "sustained or [are] immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 101-02 (citations omitted). And, "though 'past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury,'" the primary inquiry is still whether the threat of harm is "premised upon more than hypothetical speculation and conjecture that harm will occur in the future." *Palmer v. City of Chi.*, 755 F.2d 560, 571 (7th Cir. 1985) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Thus, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 571 (quoting *O'Shea*, 414 U.S. at 495-96).

Here, Plaintiffs seek to amend the Enhanced Procedures, which they contend fail to comport with procedural due process. But those named Plaintiffs who have registered since the implementation of the new procedures have received waivers and were allowed to register

without payment of the $100.00 fee, while the other named Plaintiffs have yet to attempt to register under the new procedures. As such, in order for the individual Plaintiffs to have standing to assert a claim for prospective injunctive relief directed at the Enhanced Procedures, a number of contingencies would have to occur. Plaintiffs would have to: (a) experience an annual renewal or change-of-status event triggering an additional duty to register; (b) be indigent and be unable to pay the fee when registration is required; (c) request a waiver; (d) be denied a waiver or not be provided an opportunity to complete a waiver form; (e) appeal the denial to the supervising officer; (f) have the appeal denied; and (g) be denied registration, rendering them non-compliant with SORA. Because so many contingent events must take place before Plaintiffs can obtain standing to seek prospective injunctive relief, the threat of injury to Plaintiffs simply is too "conjectural" and "hypothetical" to confer standing here. Therefore, Plaintiffs lack standing to pursue the injunctive relief they seek, and their prayer for injunctive relief must be stricken from the Complaint.

### 2. Standing to Seek Monetary Damages

Defendants only challenge Plaintiffs' standing to seek injunctive relief, apparently perceiving that Plaintiffs have standing to seek damages for past harms they allegedly suffered, to the extent they can state such a claim. This is correct. Plaintiffs have standing to seek damages as to harms they purport to have suffered under the procedures that were in place prior to the implementation of the Enhanced Procedures. Plaintiffs, however, cannot seek damages for any injuries that allegedly occurred after the implementation of the Enhanced Procedures because Plaintiffs either have received waivers under the new procedures or have not attempted to obtain waivers since their implementation. As such, any claim for damages that any of the

Plaintiffs may bring, to the extent they do so properly, can stem only from conduct occurring prior to November 20, 2012.

### B.    Due Process

Defendants also seek dismissal of all counts of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs fail to state a claim.  In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must accept as true all of the allegations contained in the complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Id.* at 663 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Moreover, the factual allegations of the complaint must be sufficient to raise a right to relief above the speculative level.  *Twombly*, 550 U.S. at 555.

As an initial matter, the Court notes that the Complaint fails to set forth clearly the precise nature of the constitutional challenge brought by Plaintiffs in Count I (Due Process).  Based upon the totality of the allegations, however, it appears that Plaintiffs' Complaint asserts a denial of procedural due process under the Fourteenth Amendment by challenging the procedures used by CPD to enforce SORA.  It is important to note, however, that Plaintiffs do not challenge the constitutionality of SORA itself or its registration fee requirement.

With that in mind, in order for Plaintiffs to state a claim for denial of procedural due process, they must establish that:  (a) they have suffered a deprivation involving a property or liberty interest; and (b) there were inadequate procedures in place to protect Plaintiffs from the deprivation of a liberty or property interest.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (due process claim must arise out of protected interests of life, liberty, or property); *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) ("[t]he fundamental requirement of due process

is the opportunity to be heard "at a meaningful time and in a meaningful manner.").[3] The Court does not reach the second step, however, if Plaintiffs fail to establish that they have a property or liberty interest at stake in the first place. *Loudermill*, 470 U.S. at 541.

That is to say, "[b]efore a party may assert a due process argument – procedural or substantive – it must establish that it has a 'legitimate claim of entitlement' to the right being asserted." *New Burnham Prairie Homes, Inc. v. Vill. of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990) (quoting *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Thus, in *Crenshaw v. Baynerd*, the Seventh Circuit held that, in order to state a procedural due process claim, a plaintiff must identify the property or liberty interest it claims is impacted. 180 F.3d 866, 869 (7th Cir. 1999) (citing *Roth*, 408 U.S. at 577 and *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 459-62 (1989)). Without doing so, a plaintiff "assert[s] nothing more than a right to process, and the mere expectation of receiving a state-afforded process does not establish either an independent liberty or property interest protected by the Due Process Clause." *Id.*

Here, Plaintiffs fail to specifically identify in their pleadings or brief the liberty or property interest they believe is at issue. The Court therefore finds itself in the position of having to infer the nature of the interest or interests (there are six individual Plaintiffs, after all) that form the basis of Plaintiffs' due process claim.

### 1. David Johnson, Gera Simon, and Lance Pisman

Plaintiff David Johnson alleges that he is an indigent individual residing in Chicago, who is required to register pursuant to SORA. Johnson alleges that: (a) he registered and paid his fee

---

[3] In assessing the adequacy of the procedures, the Court must apply the balancing test set forth in *Matthews*, 424 U.S. at 334-35, which requires the Court to examine the following factors: (1) whether the plaintiff's private interest was affected by official action; (2) the risk of erroneous deprivation of interest and probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest in the present procedures, including fiscal and administrative burdens in changing them. *Id.*

on November 15, 2011; (b) he registered his change-of-employment event on March 6, 2012, at which time he understood he did not have to pay his renewal registration fee until November 15, 2012; (c) when he registered another change of employment on October 9, 2012, the CPD demanded the annual registration fee, which he did not have; and (d) for this reason, he was denied registration and a waiver. However, when Johnson reported yet another change-of-employment event on November 20, 2012, he was granted a waiver.

Plaintiff Simon alleges that he paid his annual registration fee on December 13, 2011, despite being indigent, with money donated by his religious congregation. Simon further alleges that when he returned on December 10, 2012, with his completed waiver application, he was granted a waiver and allowed to register without paying a fee. Simon apparently seeks to recover the $100.00 fee paid in 2011.

Plaintiff Pisman similarly alleges that he requested a waiver on August 17, 2012, and August 20, 2012, but his requests were denied. Like Simon, Pisman borrowed $100.00 and paid the fee on August 21, 2012. He also presumably seeks to recoup his prior payment. None of these Plaintiffs allege that they were jailed for non-compliance with SORA.

Based on these allegations, it appears that Johnson, Simon, and Pisman are alleging that they were deprived of a property interest in the $100.00 fee that they were forced to pay in 2011, because they should have received a waiver but CPD did not have adequate procedures for them to do so. SORA specifically states, however, that the CPD "*may* waive the registration fee if it determines that the person is indigent and unable to pay the registration fee." 730 ILSC 150/3(c)(6) (emphasis added). The mere *possibility* of obtaining a waiver, the granting of which is within CPD's discretion, is not a sufficiently concrete right to constitute a protected property interest. *See*, *e.g.*, *Roth*, 408 U.S. at 577 ("To have a property interest in a benefit, a person

13

clearly must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined."); *Cornelius v. LaCroix*, 838 F.2d 207, 210-11 (7th Cir. 1988) ("where state law gives people a benefit and creates a system of nondiscretionary rules governing revocation or renewal of that benefit, the recipients have a secure and durable property right, a legitimate claim of entitlement."); *Reed v. Vill. of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983) (for due process, "property is what is securely and durably yours under state (or as in *Goldberg* federal) law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain. . . ."). Plaintiffs have no discernible property interest in obtaining a discretionary waiver of the registration fee.

Because they cannot demonstrate that they were deprived of a "legitimate claim of entitlement" to a waiver, Johnson, Simon, and Pisman have no applicable property interest. *Roth*, 408 U.S. at 577. Their due process claims must be dismissed.

### 2. Melissa Coughlin

Coughlin's allegations are quite different than her co-litigants. Coughlin claims that she called the CPD in July 2012 to find out about the waiver process, but was told that there was none. Coughlin therefore showed up at CRS on July 18, 2012, with her $100.00 fee, ready to register. Instead of accepting her money, however, Chapman, the registering officer, unilaterally waived her fee and requested her phone number in order to pursue an improper relationship with Coughlin. Coughlin acquiesced, concerned that she would not be able to register. Although Chapman's alleged behavior was reprehensible and unsavory (and perhaps actionable via other means), it does not give rise to a constitutional due process claim as no property or liberty

14

interest was implicated. Coughlin was granted a waiver and permitted to register; she therefore fails to state a due process claim.[4]

### 3. Tommy Johnson and Preston Robinson

Named Plaintiff Tommy Johnson alleges that he properly registered pursuant to SORA on December 29, 2010, but was arrested for drug possession in November, 2011, and held in jail until February, 2012, after his annual registration time had passed. When he was released from jail, Johnson went to CRS to register. He requested a fee waiver on two separate occasions but was twice denied. Johnson subsequently was arrested on March 15, 2012, for gambling, and when it was discovered that he was in violation of SORA, he was charged with that violation as well. According to the Complaint, Johnson is incarcerated and awaiting trial on the SORA charge. Similarly, Robinson also alleges that he attempted to register in January 2012, but was turned away because he only had part of the $100.00 fee. On June 12, 2012, when Robinson was arrested on other charges, it was determined that he was in violation of SORA, and he was arrested and incarcerated for his alleged violations of SORA. As of the time the Complaint was filed, Robinson was incarcerated and currently awaits trial on the SORA charge.

As Plaintiffs point out, SORA is a strict liability statute. *See People v. Molnar*, 222 Ill.2d 495, 520-21 (Ill. 2006) (quoting 730 ILCS 150/10(a)) ("Any person who is required to register under this Article who violates any of the provisions of this Article . . . is guilty of a Class 4

---

[4] Coughlin also asserts a Fourth Amendment claim, alleging that Chapman deprived her of her Fourth Amendment guarantee to privacy, dignity and security against arbitrary and invasive acts by officers of the government by requesting her telephone number. But, to state a claim under the Fourth Amendment, Coughlin must allege a search or a seizure, which she does not do. *See, e.g.*, *White v. City of Markham*, 310 F.3d 989, 993 (7th Cir. 2002); *Donovan v. City of Milwaukee*, 17 F.3d 944, 948 (7th Cir. 1994). Moreover, as Defendants point out, mere telephone calls from law enforcement officers do not rise to the level of a seizure. *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 200 (7th Cir. 1985). However reprehensible Officer Chapman's conduct is alleged to be (and indeed, if the allegations are true, they are certainly troubling), it does not reach the level of a search or seizure. Evidently recognizing the deficiency of this claim, Plaintiffs fail to address Defendants' arguments in their response brief.

felony."). Once a sex offender's annual registration date passes and he has not registered, he is automatically in violation of the law and will be jailed if charged and convicted. 730 ILCS 150/10(a). Defendants make light of this point, claiming that individuals who violate SORA "*may* 'be required to serve a minimum period of 7 days confinement in the local county jail.'" (Dkt. 74 at p. 9.) (Emphasis added.) But the statute clearly states that "[a]ny person convicted of a violation of any provision of this Article *shall*" be jailed for a week. 730 ILCS 150/10(a) (emphasis added).

"[T]he interest in being free from physical detention by one's own government" has been called "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992), and *Parham v. J.R.*, 442 U.S. 584, 600 (1979)). The denial of registration exposes sex offenders to liability and incarceration. This is precisely the type of situation that requires due process.

The Court thus concludes that Johnson and Robinson have colorably alleged that they were wrongfully denied due process when they were not provided an opportunity to seek a waiver of the registration fee prior to the commencement of the Enhanced Procedures, which resulted in the deprivation of their liberty. Therefore, Johnson's and Robinson's due process claims survive Defendants' motion to dismiss.

### C.      Equal Protection

Defendants also argue that Plaintiffs fail to state an equal protection claim. In evaluating whether a plaintiff has stated an equal protection claim, a court must first determine whether the challenged actions "target[] a suspect class or address[] a fundamental right." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 637 (7th Cir. 2007), *cert. denied*, 553 U.S. 1032 (2008). If so, a higher degree of scrutiny (strict or intermediate) will be applied to evaluate the

16

government's actions. *Id.* If not, the Court will apply a rational basis test to determine whether the challenged actions were "rationally related to a legitimate state interest." *Id.* at 637-38. Thus, "[i]n order to survive a motion to dismiss for failure to state an equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.'" *Id.* at 639 (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)). Here, Plaintiffs' cursory attempt at stating an equal protection claim fails.

Plaintiffs' equal protection claim is set forth in its entirety in only two paragraphs of their Complaint:

> The City has treated and does treat people who are unable to pay SORA fees and are unable to comply with SORA differently from people who pay SORA fees and therefore are able to comply with SORA. *See* Bearden v. Georgia, 461 U.S. 660 (1983). As a result, the City's policies and/or practices violate equal protection of the plaintiffs and the plaintiff class.

> Furthermore, plaintiffs and the plaintiff class have been deprived of equal protection by being subject to discrimination intentionally visited on them by state actors who knew or should have known that they had no justification, based on their public duties, for singling them out for unfavorable treatment. *See Del Marcelle v. Brown County Corp.*, et al., No. 10-3426 (en banc) (May 17, 2012).

(Compl. ¶¶ 86-87.)

From these two paragraphs, Plaintiffs appear to claim discrimination based upon Plaintiffs' indigence. In general, federal courts will apply the rational basis test in evaluating equal protection claims brought on behalf of indigent individuals. *See St. John's United*, 502 F.3d at 638; *Dotson v. Shalala*, 1 F.3d 571, 580 (7th Cir. 1993). But, here, Plaintiffs allege in a conclusory fashion that the CPD's actions have "no justification" and provide no specific facts or argument from which the Court can reasonably infer that the City's actions were "not rationally

related to some legitimate public purpose." *St. John's United,* 502 F.3d at 639. This failure compels dismissal of Plaintiffs' equal protection claim without prejudice.

### D.        Violation of Illinois Constitution, Art. I, § 14

Defendants' final argument is that Plaintiffs also fail to state a claim for violation of the Illinois Constitution. Plaintiffs claim that the City's methods of enforcing SORA are in willful and wanton disregard of Article I, § 14 of the Illinois Constitution, which provides that:

> No person shall be imprisoned for debt unless he refuses to deliver up his estate for the benefit of his creditors as provided by law or unless there is a strong presumption of fraud. No person shall be imprisoned for failure to pay a fine in a criminal case unless he has been afforded adequate time to make payment, in installments if necessary, and has willfully failed to make payment.

The entirety of Plaintiffs' Illinois constitutional claim is set forth in the following paragraph:

> The City has a policy and/or practice to refuse to accept partial payment or implement an installment plan, if necessary, if a person is unable to pay fees required under SORA.

(Compl. ¶ 89.)

The factual basis for this claim is less than clear. Plaintiffs presumably wish to allege that the City's refusal to accept partial payments or installment payments and then imprison Plaintiffs for failure to comply with SORA violates this provision of the Illinois Constitution. But they do not plead this, not even in a conclusory fashion. Nor do Plaintiffs allege that the registration fee is either a "debt" or a "fine in a criminal case" as those terms appear in Article I, § 14 or set forth any facts that would make it so. Plaintiffs do argue the applicability of this provision in their brief opposing the current motion, but it is well-established that a party may not amend its complaint via a response brief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 448 (7th Cir. 2011). Accordingly, Plaintiffs fail to state a claim for violation of the Illinois Constitution, and Count III is dismissed without prejudice.

18

## II.     Plaintiffs' Motion for Preliminary Injunction

As discussed above, the Court concludes that none of the six named Plaintiffs have standing to seek prospective injunctive relief as to the Enhanced Procedures currently in place at CPD.  Because the standing inquiry is a purely legal issue, the Court does not reach the merits of the evidence put forth at the hearing.  For the reasons set forth above, Plaintiffs' motion for a preliminary injunction as to the Enhanced Procedures is denied due to lack of standing.

## III.    Plaintiffs' Motion for Class Certification

Plaintiffs have moved to certify the following class:

> All poor persons from October 26, 2010 to the present who have or will be denied their right to register under SORA by the CPD due to the registration fee and all poor persons who paid or will pay the SORA registration fee to the CPD and were not provided with a procedure to contest whether the fee was properly charged.

(Dkt. 78 at 4.)   The proposed class definition suffers from a number of fatal deficiencies, requiring the denial of Plaintiffs' motion.

To obtain certification, Plaintiffs must first satisfy Rule 23(a), which requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  If the requirements of Rule 23(a) are met, Plaintiff must also satisfy Rule 23(b), which requires that the proposed class fall within one of the three enumerated categories:  "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because the risk that the class action adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief,

or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

Furthermore, although "as a general principle, a court is not allowed to engage in analysis of the merits in order to determine whether a class action may be maintained . . . the boundary between a class determination and the merits may not always be easily discernible. . . ." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598-99 (7th Cir. 1993); *see Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2551 (2011) (class certification analysis "frequently . . . will entail some overlap with the merits of the plaintiff's underlying claim. . . . The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation."). As the Seventh Circuit explained in *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001), before deciding whether to certify a class, "a judge should make whatever factual and legal inquiries are necessary under Rule 23." Thus, the Court is not required to accept those allegations in the complaint as true for the purposes of deciding a motion for class certification. *See id.*

Here, the class definition offered by Plaintiffs is confusing and does not define a single, cognizable class. In fact, the proposed definition seems to encompass two different, independent classes. For the purposes of discussion, the Court will refer to these two categories of putative class members as "Subclass One" and "Subclass Two."

As construed, Subclass One consists of "[a]ll poor persons from October 26, 2010 to the present who have or will have denied their right to register under SORA by the CPD due to the registration fee." This subclass includes individuals who either were or are obligated to complete a SORA registration, but either were not or will not be permitted to register because they are "poor" and, presumably, unable to pay the registration fee.

Subclass Two consists of "all poor persons who paid or will pay the SORA registration fee to the CPD and were not provided with a procedure to contest whether the fee was properly charged."  This subclass includes "poor persons" who (a) already paid the registration fee but were not permitted to contest their payment of the fee; or (b) will pay the fee at some time in the future, but will not be permitted to contest their payment of the fee.

As for Subclass One, even a cursory review reveals that it cannot satisfy the commonality, typicality, and adequacy of representation requirements of Rule 23.  Under Rule 23(a)(2)'s commonality requirement, a plaintiff must demonstrate that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2)).  "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)."  *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).  But, as the Supreme Court recently clarified in *Dukes*, -- U.S. --, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 (1982)), "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  This means their claims must "depend upon a common contention [which] . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  Thus, it "is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation" that is at the core of the commonality analysis.  *Id.* (internal citations omitted) (emphasis in original).

Rule 23(a)(3)'s requirement of typicality "is closely related to the . . . question of commonality."  *Rosario*, 963 F.2d at 1018.  Claims that arise from "the same event, practice or course of action" and are based on the same legal theory are generally found to be typical.

21

*Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) (citing *Rosario*, 963 F.2d at 1018).

As for the final element, "the adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "[J]ust as the inquiry into commonality and typicality are linked, so too are the inquiries into typicality and adequacy of representation, because '[t]ypicality insures the class representative's claims resemble the class's claims to an extent that an adequate representation can be expected.'" *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 429 (N.D. Ill. 2003) (internal citations omitted).

Taking each element in turn, Subclass One lacks a common injury suffered by the putative class members "capable of classwide resolution." *Dukes*, 131 S. Ct. at 2551. Subclass One, as framed by Plaintiffs, necessarily encompasses two separate and distinct categories of claimants: (1) those who have been denied the right to register under the prior procedures; and (2) those who have been denied the right to register under the Enhanced Procedures. Neither party disputes that the CPD utilized different policies and procedures prior to and after November 20, 2012, in determining whether to waive a fee for an indigent SORA registrant. Nor do the parties dispute that there are numerous, individualized reasons why potential class members may not have been permitted to register: in some cases, they may have requested a waiver but were denied; in other cases, they may not have requested a waiver at all; in still others, they may have been offered the chance to apply for a waiver but opted not to do so. Indeed, Plaintiffs themselves specifically assert that the registering officers at CRS did not deal with registrants in a uniform manner under the prior procedures. Given the varied nature of the

circumstances, individualized inquiries will be necessary to resolve the central issues in this case. Thus, Subclass One does not satisfy the commonality requirement of Rule 23(a)(2).

As for the requirements of typicality and adequacy of representation, it must be noted that only the claims brought by two of the named Plaintiffs, Tommy Johnson and Preston Robinson, survive Defendants' motion to dismiss. Thus, the claims of these two individuals must be typical of the putative class. Both Johnson and Robinson allege that they suffered an injury when they were not allowed to register due to their indigence under the prior procedures, not the Enhanced Procedures. Moreover, both allegedly have been jailed for their failure to register, which is likely atypical of the majority of the remaining putative class members, as reflected in the experiences of the other named Plaintiffs here. Therefore, the claims asserted by Johnson and Robinson cannot be found to be typical of the other class members, nor can it be said that they would adequately represent the interests of the entire putative class as it is currently defined. Certification of Subclass One is, therefore, inappropriate.

With respect to Subclass Two, the Court already has concluded that those Plaintiffs wishing to assert a due process claim on the basis that they have suffered or will suffer a deprivation of their property right to a fee waiver fail to state a cognizable claim for relief. Thus, the Court denies Plaintiffs' motion to certify Subclass Two.

Because Plaintiffs have failed to demonstrate that the class, as they have defined it, satisfies the requirements of Rule 23(a), Plaintiffs' motion for class certification is denied.

**Conclusion**

Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint [69] is granted in part and denied in part. The claims brought by Plaintiffs David Johnson, Gera Simon, Melissa Coughlin and Lance Pisman are dismissed in their entirety for lack of standing to seek prospective injunctive relief and for their failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs Tommy Johnson and Preston Robinson may pursue their claims for damages for denial of procedural due process under the City's prior procedures. Plaintiffs' Motion for Preliminary Injunction [5] is denied because Plaintiffs lack standing to pursue prospective injunctive relief. Plaintiffs' Motion to Certify Class [15] is denied because Plaintiffs fail to satisfy the requirements of Fed. R. Civ. P. 23(a).

**SO ORDERED**                    **ENTER: 7/22/13**

_____

**JOHN Z. LEE**
**U.S. District Judge**